**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO.  1:20-cv-20157-WILLIAMS-TORRES**

MARLENE CUERTO IGLESIAS and
MIRIAM IGLESIAS ALVAREZ, both
individuals,

         Plaintiffs,

v.

PERNOD RICARD, Public Société
Anonyme,

         Defendant.

_____/

**DEFENDANT PERNOD RICARD S.A.'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P 12(B)(1),
12(B)(2), 12(B)(5) AND 12(B)(6), AND MEMORANDUM OF LAW IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

*Page*

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

   A.  Plaintiffs' Allegations Regarding The Alleged Seizure Of Conac Cueto Property In 1963 ................................................................................................................... 2

   B.  Pernod Ricard, Public Société Anonyme's (Lack Of Any) Relationship To The State Of Florida And To The Property Allegedly Confiscated In 1963 ..................... 4

ARGUMENT .................................................................................................................... 6

I.     THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT LACKS PERSONAL JURISDICTION OVER PRSA ................................................................ 6

   A.  Plaintiffs Cannot Establish General Personal Jurisdiction Over PRSA ........................ 7

      1. Plaintiffs Fail To Establish A Prima Facie Case Of General Jurisdiction ................ 7

          a.    Plaintiffs Cannot Establish General Personal Jurisdiction Based On PRSA's Contacts With Florida Or Florida-Based Firms ......................................................................................................... 8

          b.    Plaintiffs Cannot Establish General Personal Jurisdiction By Imputing The Contacts Of PRSA's Subsidiaries Onto PRSA ................................................................................................. 9

      2. Plaintiffs Cannot Overcome The Evidence Confirming That The Court Lacks General Personal Jurisdiction Over PRSA ........................................... 12

   B.  Plaintiffs Cannot Establish Specific Personal Jurisdiction Over PRSA ..................... 13

II.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT BECAUSE IT LACKS SUBJECT MATTER JURISDICTION ........................................................ 15

III.   PLAINTIFFS HAVE FAILED TO ALLEGE THAT PRSA KNOWINGLY TRAFFICKED IN PROPERTY IN WHICH EITHER PLAINTIFF ALLEGEDLY HAS A CLAIM ................................................................................................................ 18

   A.  Plaintiffs Make No Plausible Allegations That PRSA Transacts In Property Allegedly Expropriated From The Cueto Family ....................................................... 18

# TABLE OF CONTENTS
(continued)

*Page*

    B.   Plaintiffs Make No Plausible Allegations That PRSA "Knowingly And Intentionally" Transacted In Any "Confiscated" Property ........................................... 20

    C.   Plaintiffs Fail To Plead Ownership Of A Claim To Property Confiscated By The Government Of Cuba ................................................................................................ 21

IV.    DISMISSAL IS PROPER BECAUSE PRSA WAS NOT PROPERLY SERVED WITH PROCESS ................................................................................................................ 23

CONCLUSION .................................................................................................................. 25

REQUEST FOR HEARING .............................................................................................. 26

CERTIFICATE OF SERVICE .......................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

<em>Page</em>

### <u>Cases</u>

*Abramson v. Walt Disney Co.*,
    132 F. App'x 273 (11th Cir. 2005) ...................................................................13

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
    416 F.3d 1242 (11th Cir. 2005) ..............................................................19, 20

*American Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ......................................................................20

*Aronson v. Celebrity Cruises, Inc.*,
    30 F. Supp. 3d 1379 (S.D. Fla. 2014) (Williams, J.) .......................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................19, 20, 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................19, 21

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017)......................................................................................8

*Brownsberger v. Gexa Energy, LP*,
    2011 WL 197464 (S.D. Fla. Jan. 20, 2011) ...................................................10

*Cable/Home Communication Corp. v. Network Prods., Inc.*
    902 F.2d 829 (11th Cir.1990) ...........................................................................6

*Carmouche v. Tamborlee Management, Inc.*,
    789 F.3d 1201 (11th Cir. 2015) ...........................................................6, 7, 12

*Common Cause v. Biden*,
    748 F.3d 1280 (D.C. Cir. 2014) .....................................................................17

*Consolidated Development Corp. v. Sherritt, Inc.*,
    216 F.3d 1286 (11th Cir. 2000) ........................................................9, 10, 13

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................ *passim*

## TABLE OF AUTHORITIES
(continued)

*Page*

*Don King Products, Inc. v. Mosley,*
    2016 WL 3950930 (S.D. Fla. Jan. 27, 2016) (Williams, J.) ............................................15

*Gonzalez v. Amazon.com, Inc.,*
    2020 WL 1169125 (S.D. Fla. Mar. 11, 2020)......................................................20, 21, 23

*Goodyear Dunlap Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011)...........................................................................................................8

*Gubanova v. Miami Beach Owner, LLC,*
    2013 WL 6229142 (S.D. Fla. Dec. 2, 2013) .....................................................................11

*In re Harbor East Dev. Ltd.,*
    2011 WL 45335 (S.D. Fla. Bankr. Jan. 6, 2011) .............................................................19

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984)..........................................................................................................12

*Hickey v. Celebrity Cruises, Inc.,*
    2015 WL 13776760 (S.D. Fla. Feb. 2, 2015) ..................................................................23

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)............................................................................................................7

*Jacobs v. Tempur-Pedic International, Inc.,*
    626 F.3d 1327 (11th Cir. 2010) .......................................................................................19

*Kawa Orthodontics, LLP v. Secretary, U.S. Department of the Treasury,*
    773 F.3d 243 (11th Cir. 2014) .........................................................................................17

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..............................................................................................15, 16, 17

*McCullough v. Royal Caribbean Cruises, Ltd.,*
    268 F. Supp. 3d 1336 (2017) .....................................................................................10, 11

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,*
    288 F.3d 1264 (11th Cir. 2002) .....................................................................................9, 10

*MeterLogic, Inc. v. Copier Solutions, Inc.,*
    126 F. Supp. 2d 1346 (S.D. Fla. 2000) ...........................................................................13

**TABLE OF AUTHORITIES**
(continued)

*Page*

*Pardazi v. Cullman Med. Ctr.*,
    896 F.2d 1313 (11th Cir. 1990) .......................................................................25

*Perfumer's Workshop, Ltd. v. Roure-Bertrand du Pont, Inc.*,
    737 F. Supp. 785 (S.D.N.Y. 1990) ...................................................................24

*Rautenberg v. Falz*,
    193 So. 3d 924 (Fla. 2d DCA 2016) .................................................................14

*Robey v. JPMorgan Chase Bank, N.A.*,
    343 F. Supp. 3d 1304 (S.D. Fla. 2018) ...............................................................8

*Ruiz v. Experian Information Solutions, Inc.*,
    2017 WL 1378242 (S.D. Fla. Apr. 14, 2017) ....................................................21

*Schulman v. Glob. Citizens Travel, LLC*,
    2015 WL 11018438 (S.D. Fla. Jan. 20, 2015) (Williams, J.) .....................10, 11

*Schulman v. Institute for Shipboard Educ.*,
    624 F. App'x 1002 (11th Cir. 2015) .................................................................12

*Sculptchair, Inc. v. Century Arts, Ltd.*,
    94 F.3d 623 (11th Cir. 1996) .............................................................................6

*Simon v. Eastern Kentucky Welfare Rights Organization*,
    426 U.S. 26 (1976) ...........................................................................................17

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) .........................................................................6

*Socialist Workers Party v. Leahy*,
    145 F.3d 1240 (11th Cir. 1998) ..................................................................16, 17

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .....................................................................................18

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ...........................................................................................16

*Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*,
    184 F. Supp. 2d 1246 (S.D. Fla. 2001) .............................................................11

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>*Page*</u>

*Thompson v. Carnival Corp.*,
    174 F. Supp. 3d 1327 (S.D. Fla. 2016) ........................................................................10

*United Technologies Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) .................................................................................6

*Verizon Trademark Servs., LLC v. Producers, Inc.*,
    810 F. Supp. 2d 1321 (M.D. Fla. 2011) ................................................................10, 11

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988) ...........................................................................................23

*Waite v. All Acquisition Corp.*,
    901 F.3d 1307 (11th Cir. 2018) .........................................................................8, 12, 14

*Walden v. Fiore*,
    571 U.S. 277 (2014) .........................................................................................7, 14

*Wolf v. Celebrity Cruises, Inc.*,
    683 F. App'x 786 (11th Cir. 2017) .............................................................................14

## <u>Statutes</u>

22 U.S.C. § 6823(13)(A)(i) ....................................................................................18, 20

22 U.S.C. § 6023(13)(A)(ii) .........................................................................................20

22 U.S.C. § 6023(15)(B) ...............................................................................................22

22 U.S.C. § 6082(a)(1)(A) ...............................................................................1, 19, 21, 22

22 U.S.C. § 6082(a)(4)(B) ............................................................................................23

Fla. Stat. § 48.193(1)(a) ...........................................................................................6, 14

Fla. Stat. § 48.193(2) ...................................................................................................7

## <u>Rules and Regulations</u>

Federal Rule of Civil Procedure 4(e) ...............................................................................6

Federal Rule of Civil Procedure 4(f) .............................................................................23

# TABLE OF AUTHORITIES

(continued)

*Page*

Federal Rule of Civil Procedure 4(h)........................................................................23

Federal Rule of Civil Procedure 12(b)(1) ...........................................................2, 25

Federal Rule of Civil Procedure 12(b)(2) .......................................................2, 15, 25

Federal Rule of Civil Procedure 12(b)(5) ...........................................................2, 25

Federal Rule of Civil Procedure 12(b)(6) .......................................................2, 4, 25

31 C.F.R. § 515.204 ................................................................................................5

Council Regulation No. 2271/96, 36 I.L.M. 125, 1997 WL 79502 (Jan. 1997)...........................25

H.R. Rep. No. 104-468 (1996)...............................................................................23

# INTRODUCTION[1]

Plaintiffs Marlene Cueto Iglesias (also identified in the first Amended Complaint as Marlene "Cuerto") and Miriam Iglesias Alvarez assert that in 1963, a set of assets located in Havana, Cuba that were allegedly owned by a Cuban cognac company called Conac Cueto (the "Company" or "Conac Cueto"), was expropriated by the Cuban government.  Plaintiffs allege, without support, that the Company was eventually folded into a state-owned enterprise and its distilled spirits assets were repurposed and made a part of the "Havana Club" rum brand thirty years later in 1993, when France-based Pernod Ricard Public Société Anonyme ("PRSA" or "Pernod") started trading in Cuba with a state-owned entity.  Plaintiffs allege that Pernod has, since then, distributed Havana Club rum, which was "partially derived from Conac Cueto which is confiscated property owned by" her family.

Plaintiffs bring their claims under Title III of the Helms-Burton Act (the "Act"), which provides that anyone who "traffics in property" expropriated by the Cuban Government on or after January 1, 1959, may be liable for money damages to "any United States national who owns the claim to such property." 22 U.S.C. § 6082(a)(1)(A).  Under the Act, a person "traffics" in "confiscated" property if that person "knowingly and intentionally" engages in a commercial activity "using or otherwise benefiting from confiscated property," or "causes, directs, participates in, or profits from" trafficking by another person, or otherwise engages in trafficking through another person. *Id.*, §§ 6023(13)(A)(ii)-(iii).

The Complaint should be dismissed under any of four separate and independent provisions of Rule 12 of the Federal Rules of Civil Procedure.  *First,* the Court lacks general and specific personal jurisdiction over PRSA, a French company headquartered in Paris.  PRSA does not do business in Florida, is not licensed in Florida, and does not have an office or physical presence in Florida; therefore, the Court accordingly lacks *general personal jurisdiction* over PRSA.  Further, PRSA's declarant also explains that PRSA does not manufacture cognac in Cuba, and it does not distribute Havana Club branded rums in Florida or anywhere in the United States, since Cuban-origin spirits cannot be sold in the U.S. pursuant to U.S. embargo regulations.  Plaintiffs cannot, consequently, establish *specific personal jurisdiction* over PRSA. While Plaintiffs seek to establish personal jurisdiction over PRSA on agency or alter-ego theories, none of the required legal

---

[1] Unless otherwise noted, all emphasis is added and internal citations and quotations omitted.

elements of an agency relationship or alter-ego finding are alleged.

*Second*, the Court lacks subject matter jurisdiction because Plaintiffs lack standing. Plaintiffs' claim that the Cuban government expropriated Conac Cueto's property in Cuba, folded Conac Cueto's described assets into a new company and rebranded its offerings "Havana Club," fails to allege an injury, or even the exacerbation of an injury, that is fairly traceable to PRSA.

*Third,* Plaintiffs have failed to sufficiently or plausibly state a claim under Title III. The Act requires that a plaintiff make plausible allegations that the defendant "knowingly and intentionally" trafficked in the *specific* property at issue; here, assets that once allegedly belonged to Conac Cueto. There are no plausible allegations that, if credited, establish that the *rum* products PRSA began distributing in 1993 from Cuba to countries *other* than the U.S. (in light of the Cuban embargo) are produced from assets seized from Conac Cueto in 1963, or that, if they are, PRSA had any knowledge of such connection.

*Fourth*, Plaintiffs failed to properly serve PRSA in accordance with the Hague Convention and French law for service of process. The notice of service was not addressed, directed to, or served on a person authorized to accept service of process in accordance with French law.

For all of these reasons, the Complaint should be dismissed pursuant to Rule 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).

## **FACTUAL BACKGROUND**

### **A.   Plaintiffs' Allegations Regarding The Alleged Seizure Of Conac Cueto Property In 1963**

Plaintiffs allege that Fernando Tomas Cueto Sanchez, Marlene Cueto Iglesias' late father and Miriam Iglesias Alvarez's late husband, founded a company called Conac Cueto, C.I.A., a maker of "cognac and other spirits" in Havana, Cuba (which they describe as the "Subject Property") "in the early 1950's." First Amended Complaint ("FAC") (ECF 22) ¶¶ 21, 23-24.[2] Conac Cueto, they allege, was expropriated in 1963 by the Cuban government. *Id.* ¶ 24. Property taken at that time "included intellectual property, oak barrels, bottles, labels, corks, tasters, meters and other assets the Company used in the production and sale of cognac." *Id.* ¶ 25. Plaintiffs allege, without support, that they are "the rightful owner (sic) of a 100% interest in certain

---

[2] "Coñac" is the Spanish word for cognac.

property" of Conac Cueto. *Id.* ¶ 21.

Plaintiffs allege that following the alleged nationalization of the Company, the Cuban government at some point folded its assets into a state-controlled entity, the "Cuban Government Rum Company," supposedly an amalgamation of various Cuban spirit companies. *Id.* ¶ 26. Conac Cueto's purported cognac brands, they assert, were "eventually rebranded as Havana Club [rum brands]" (at some unspecified date in time), and that Cuba "maintains possession of the Subject Property and has not paid any compensation to Plaintiffs for its seizure." *Id.* ¶¶ 28, 30. Moreover, Plaintiffs allege that since 1963, "the communist Cuban Government … [has] used the rights in the Subject Property to produce and sell the Company's product lines and utilize the intellectual property of the Company under the name Havana Club without consent … or compensation[.]" *Id.* ¶ 30.

Thirty years after the alleged expropriation, Plaintiffs state, PRSA "knowingly and intentionally commenced, conducted, promoted and distributed its Havana Club brand and line of products worldwide using the Subject Property … without the authorization of Plaintiffs." *Id.* ¶ 33. They further contend that PRSA has "knowingly and intentionally participated in and profited from" the Cuban government's alleged expropriation of Conac Cueto. *Id.* ¶ 34. They fail, however, to allege or provide a reasonable inference that:

- the Havana Club rum products PRSA distributes are the assets purportedly nationalized in 1963;
- that the "barrels, bottles, labels, corks, tasters, meters and other assets" expropriated in 1963 were in use 30 years later, in 1993, when PRSA began distributing Havana Club products, and thereafter;
- that Conac Cueto's wholly unspecified intellectual property – whether trade secrets associated with Conac Cueto's products, trademarks associated with its brand names, logos, or labels, or otherwise – was exploited by the Cuban government after 1963, or after 1993; or
- that Conac Cueto had any rights or property related to non-cognac spirits, or to the name "Havana Club."

Nor do Plaintiffs support their contention that PRSA "knowingly and intentionally" engaged in commercial activities involving assets seized by Castro's government when it allegedly agreed to distribute products with trade names different from Conac Cueto's assets that were purportedly expropriated thirty years before.

**B.**   ***Pernod Ricard, Public Société Anonyme's (Lack Of Any) Relationship To The State Of Florida And To The Property Allegedly Confiscated In 1963***

Plaintiffs concede that "Pernod is a French corporation organized under foreign law," with its "principal place of business" in Paris, France. FAC ¶ 4.  They contend that "through its *subsidiaries*," PRSA "does business in the State of Florida." *Id*.  They allege further that "Pernod has sufficient minimum contacts with the State of Florida," because "through its agents and subsidiaries [it] distributes a portfolio of liquor products." *Id*. ¶ 5.  Plaintiffs claim that "Pernod owns rights in the brand Havana Club, which was partially derived from Conac Cueto." *Id*. ¶ 6.

In the Amended Complaint, Plaintiffs refocus their lens on non-party "Pernod Ricard USA, LLC" a separate U.S. subsidiary of PRSA.  Plaintiffs claim PRSA "engages in substantial activity in the state through ***its*** subsidiary" and groundlessly assert that "Pernod Ricard USA, LLC is merely an agent through which" PRSA "does business in a particular jurisdiction."   FAC ¶ 7. According to Plaintiffs, the two companies are merely "alter-egos" of one another. *Id*. ¶¶ 11, 14. The entirety of Plaintiffs' attempted invocation of personal jurisdiction rests on this "alter-ego" or "agency" theory, and the new allegations brought forth in the Amended Complaint:

- "Pernod Ricard USA … is registered to transact business in Florida."
- "Pernod Ricard USA supplies Defendant's products throughout United States and on information and belief does no other substantial business nor does it server (sic) as an agent for any other liquor companies.
- "Pernod Ricard USA sells its product in Florida, and maintains an office in Florida at 200 N New River Dr E, Fort Lauderdale, FL 33301 …"
- PRSA has not "objected (for example via a lawsuit) to Pernod Ricard USA utilizing its intellectual property or affiliating itself as an alter-ego and agent of the Defendants."
- Pernod Ricard USA's "website" contains "a link" to PRSA's website.
- PRSA's "financial reports" are "extremely telling" because they show "The Americas," as "a reportable segment," with "their sales being over 10% of total Gross Sales."
- "Defendants distribute their product throughout the Americas" and "they do not do so directly but through their alter-egos."[3]

---

[3] Plaintiffs also assert that PRSA "reported a very strong year" with a "third of those sales" coming from the U.S., a point that adds nothing to the personal jurisdiction inquiry. Likewise, Plaintiffs allege that on "Defendant's website," it states that "the point of Pernod Ricard USA, LLC is to focus more resources in the field, where it makes a difference, to accelerate decision-making and improve execution in the on-and off-premise," a citation with no relevance to this inquiry. FAC ¶¶ 12-13.

FAC ¶¶ 8-11.  Based on this "evidence," contend Plaintiffs, there is "no difference between Pernod Ricard USA and Defendant Pernod Ricard." *Id.* ¶¶ 11, 14.

However, Plaintiffs claim is fatally flawed because they fail to plead any facts that the law recognizes as supportive of "alter-ego" based personal jurisdiction. Indeed, Plaintiffs could not lodge such accusations in good faith as none of the required elements of an alter-ego finding are in fact present here. *See* Declaration of Antoine Brocas ("Decl.") ¶¶ 14-15, 19-23, attached as Exhibit 1.  As Mr. Brocas explains, Pernod Ricard USA is not a mere agent or instrumentality of PRSA, but rather a separate entity which has its own employees, officers and directors, and observes corporate formalities.  *Id.*

As for jurisdiction over PRSA directly (*i.e.,* not through a subsidiary), Plaintiffs do not allege that PRSA has any direct connection in Florida, an omission that makes sense, as PRSA has no connection to Florida. *See* Decl. ¶¶ 5-6.  PRSA is organized under the laws of, and has its principal place of business in, France. *Id.* ¶ 4.  PRSA's headquarters are located in Paris and the company's executives and corporate representative authorized to accept service of process maintain their offices at that location. *Id.*  PRSA is not registered to do business in Florida, does not have a registered agent in Florida, and has no physical presence in Florida. *Id.* ¶ 5.  Specifically, PRSA does not currently, and to the best of the declarant's knowledge, at no time relevant to the litigation, has it: (a) had offices, a mailing address, a telephone number, facilities, employees, officers, or directors in Florida; (b) had any investments or bank accounts in Florida; (c) owned or leased any real property in Florida; (d) owned or leased any personal property in Florida; (e) entered into any contracts in Florida; (f) been incorporated in or registered to do business in Florida; (g) held any license or registration in Florida; (h) purchased insurance in Florida; (i) purchased equipment, supplies, or raw goods in Florida; (j) filed any taxes or administrative reports in Florida; or (k) consented to the jurisdiction of any court in Florida.  *Id.* ¶ 6.

PRSA does not make sales of wine or spirits directly to anyone in Florida, and is not a party to any distribution agreements in the United States. *Id.* ¶ 25.  PRSA has never produced any cognac products in Cuba and it does not now, and has never, produced products under the "Conac Cueto" brand or label. *Id.* ¶¶ 9, 11.  Nor had it heard of Conac Cueto prior to this action. *Id.* ¶ 8. PRSA does not export to or distribute in the U.S. any product of Cuban origin, and is precluded from doing so by the U.S. trade embargo against Cuba. *Id.* ¶ 12; *see also* 31 C.F.R. § 515.204 (prohibiting the transport, import, or commercial transaction of merchandise that is of Cuban

origin, was located in or transported from or through Cuba, or is made or derived, in whole or in part, from materials grown, produced or manufactured in Cuba."

## ARGUMENT

## I.   THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT LACKS PERSONAL JURISDICTION OVER PRSA

This Court lacks personal jurisdiction over PRSA, a foreign corporation, regarding activity and claims alleged to have occurred entirely outside the United States. Where, as here, jurisdiction is "based on a federal question arising under a statute that is silent regarding service of process, F.R.C.P. Rule 4(e) directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996).   "Since the extent of the long-arm statute is governed by Florida law, federal courts are required to construe it as would the Florida Supreme Court." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 856 (11th Cir. 1990). That means the long-arm statute should be "strictly construed." *Sculptchair*, 94 F.3d at 627. Under Florida's long-arm statute, a defendant may be subject to personal jurisdiction in two ways: (1) general ("all-purpose") personal jurisdiction if it engages in "substantial and not isolated activity" in Florida, or (2) specific personal jurisdiction over suits that "arise out of" one of the acts specified in the long-arm statute. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015) (citing §§ 48.193(1)(a)&(2), Fla. Stat.); *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014).

The plaintiff bears the "initial burden of alleging … sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Vague and conclusory allegations are insufficient. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).   However, the analysis is not confined to the Complaint's four corners or the need to take as true all well-pled factual allegations.   Even where a plaintiff establishes a *prima facie* case of jurisdiction, if the "defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Mazer*, 556 F.3d at 1274.

Plaintiffs' conclusory allegations regarding PRSA's connection to Florida, unsubstantiated by fact, fail to establish a *prima facie* case of jurisdiction. Regardless, the declaration submitted to

the Court by PRSA clearly demonstrates that personal jurisdiction does not exist in this case.[4]

### A. Plaintiffs Cannot Establish General Personal Jurisdiction Over PRSA

Plaintiffs' attempt to invoke general personal jurisdiction over PRSA may be defeated in one of two ways: (i) by showing their jurisdictional allegations fail to make out a *prima facie* case supporting general jurisdiction; or (ii) by showing through evidence that PRSA's contacts with Florida are insufficient to trigger general personal jurisdiction. Here, the allegations and evidence show Plaintiffs fail <u>both</u> tests. A corporation's place of incorporation and principal place of business are "'paradigm all-purpose forums'" and "*only in 'exceptional' cases*" will "'a corporation's operations in" another forum "be 'so substantial and of such a nature as to render the corporation at home in that State.'" *Carmouche*, 789 F.3d at 1204 (quoting *Daimler*, 571 U.S. 139 n.19). Plaintiffs have not, and cannot, establish that this is the "exceptional" case that would render PRSA at home in Florida.

#### 1. Plaintiffs Fail To Establish A Prima Facie Case Of General Jurisdiction

Plaintiffs have failed to allege a *prima facie* case supporting general jurisdiction based on either PRSA's direct contacts with Florida, or the activities of PRSA's subsidiaries. Florida's long-arm statute provides for general jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Because this provision "extends to the limits on personal jurisdiction imposed by the Due Process Clause," the Court "need only determine whether the district court's exercise of jurisdiction . . . would exceed constitutional bounds." *Carmouche*, 789 F.3d at 1204.

The due process inquiry investigates: (1) whether the defendant has sufficient "minimum contacts" with Florida; and (2) whether jurisdiction is consistent with notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Due process ensures that a defendant only is "haled into court in a forum State *based on his own affiliation with the State*, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). The Supreme

---

[4] Plaintiffs do not specify whether their assertions are based upon general or specific jurisdiction. There is no allegation that this action arises from any conduct by PRSA in or directed to Florida, *i.e.*, specific jurisdiction. Out of an abundance of caution, PRSA addresses both possible grounds for personal jurisdiction, neither of which is properly exercised here.

Court has clarified that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction," and general jurisdiction over a foreign corporation is constitutional only where the "corporation's 'affiliations with the state are so 'continuous and systematic' as to render [it] essentially at home in the forum state,'" and *not* simply where its in-forum contacts are said to be "continuous and systematic." *Daimler*, 571 U.S. at 137, 139.

> ### a. Plaintiffs Cannot Establish General Personal Jurisdiction Based On PRSA's Contacts With Florida Or Florida-Based Firms

Plaintiffs claim PRSA has "sufficient minimum contacts" in Florida "through its agents and subsidiaries," which "distribute[] a portfolio of liquor products including Absolut Vodka, Jameson Irish Whiskey and others," and that its subsidiary, Pernod Ricard USA maintains an office and is registered to transact business in Florida. FAC ¶¶ 5, 8, 9. Importantly, nothing in the Complaint distinguishes PRSA's relationship and conduct vis-à-vis "its subsidiaries" from the typical foreign parent/domestic child relationship, which as set forth below does *not* trigger personal jurisdiction over the parent without more. Such "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts," as here, "are insufficient to support general jurisdiction." *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1319 (S.D. Fla. 2018).

Even taking the allegations about PRSA doing business with its U.S. subsidiaries as true, in any event, would not aid Plaintiffs. As an initial matter, merely "doing business"—even "substantial" business—in a forum state does not constitute the "exceptional" case that would subject a foreign company to all-purpose jurisdiction. Indeed, *Daimler* rejected as "unacceptably grasping" the notion that a corporation is subject to general jurisdiction in every state in which it "engages in a substantial, continuous, and systematic course of business." 571 U.S. at 138.[5] There, the plaintiffs filed suit in California against Daimler, a foreign corporation (like PRSA), based on

---

[5] *See also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) ("[I]n-state business, we clarified in *Daimler* and *Goodyear*, does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum state]."); *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) ("[a] corporation's continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity" and "[f]low of a manufacturer's products into the forum" does not warrant general jurisdiction); *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018) (declining to exercise general jurisdiction where "[a]t most, [defendant's] activities show that it conducted significant business in Florida").

events occurring outside of the United States. Through its U.S. subsidiary, MBUSA, Daimler's sales were "sizable" in California, accounting for 10 percent of all new sales in the United States and 2.4 percent of Daimler's worldwide sales. *Id.* at 123, 139. Such evidence was insufficient to support all-purpose jurisdiction over Daimler. *Id.* 139. Importantly, even assuming MBUSA was at home in California and its contacts were imputable to Daimler, "there would still be no basis to subject" Daimler to general jurisdiction because its "slim contacts with the State hardly render it at home there." *Id.* at 136. *Daimler* forecloses Plaintiffs' attempt to invoke jurisdiction over PRSA through its subsidiary's distribution activities because the alleged contacts between PRSA and Florida are even more tenuous than those rejected there.[6]

> **b.   Plaintiffs Cannot Establish General Personal Jurisdiction By Imputing The Contacts Of PRSA's Subsidiaries Onto PRSA**

That a foreign parent has a U.S. subsidiary in the forum does not render the parent amenable to general personal jurisdiction. "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000). Where the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Id.*; *see also Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) (a subsidiary's activities may be imputed only where it "is merely an agent" or lacks "any semblance of individual identity"). Nor does the fact that an entity is another's "subsidiary" mean that it is the parent firm's "agent" or "alter ego" (indeed the law strictly construes such claims). Plaintiffs' attempt to establish general jurisdiction by labeling Pernod Ricard USA an "agent" or "alter-ego" of PRSA fails for several reasons.

*First*, any allegation of all-purpose jurisdiction on the basis of an agency/alter-ego theory is contradicted by *Daimler*. As noted, even where a subsidiary's contact may be imputed to the parent, the exercise of general jurisdiction offends due process where, as here, the parent

---

[6] The exhibits attached to the Complaint reference PRSA's sales in "the Americas" (which includes Canada, Latin America, and the United States), and do not establish anything regarding sales in the United States, much less in Florida. *See* FAC ¶¶ 11, 12.

corporation has so few contacts to render it at home in the forum state.  *Daimler*, 571 U.S. at 136, 139. Moreover, this Court and others in this District have questioned whether the Eleventh Circuit's application of agency to establish general jurisdiction survives *Daimler*, which rejected a similar approach by the Ninth Circuit.[7]

Even assuming the theory's continued viability, the allegations do not establish agency between PRSA and its subsidiaries, which requires a showing of significant, "day-to-day" "control by the parent over the internal business operations and affairs of the subsidiary." *Brownsberger v. Gexa Energy, LP*, 2011 WL 197464, at *3 (S.D. Fla. Jan. 20, 2011).  Allegations that Pernod Ricard USA distributes PRSA's products in the United States and the Americas, that PRSA is referenced in Pernod Ricard USA's website, and that they share the same logo (FAC ¶¶ 6, 9, 10) fall far short of demonstrating that PRSA exerts operational control over its subsidiaries. *See Daimler*, 571 U.S. at 123 (no general jurisdiction based on subsidiary, which served as parent's "exclusive importer and distributor in the United States"); *Sherritt*, 216 F.3d at 1293 (rejecting agency theory based on fact that subsidiary markets parent's products in the United States where subsidiary maintains own officers and board, determines own pricing and marketing practices, and has own bank accounts, offices, and employees).  Indeed, Plaintiffs' assertion that "the point of" Pernod Ricard USA, "is to focus more resources in the field" and "accelerate decision-making and improve execution" *supports* the conclusion that Pernod Ricard USA operates independently, with PRSA deferring daily, on-the-ground decision-making to its subsidiary.  FAC ¶ 13.

Similarly, nothing in Plaintiffs' allegations suggest that Pernod Ricard USA is a mere alter-ego of PRSA, and they allege none of the legal elements of such relationships. "[A] parent-subsidiary relationship does not on its own establish two entities as 'alter egos,' and thus does not indicate that general jurisdiction over one gives rise to general jurisdiction over the other." *McCullough*, 268 F. Supp. 3d at 1349 n.9. To pierce the corporate veil for jurisdictional purposes, a plaintiff must show "'the subsidiary was a mere instrumentality of the parent and that the parent engaged in improper conduct through its organization or use of the subsidiary.'" *Verizon*

---

[7] *See Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1391 (S.D. Fla. 2014) (Williams, J.) (questioning continued viability of Eleventh Circuit's decision in *Meier* following *Daimler*)); *Schulman v. Glob. Citizens Travel, LLC*, 2015 WL 11018438, at *4 (S.D. Fla. Jan. 20, 2015) (Williams, J.); *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1348–49 (2017); *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1336–37 (S.D. Fla. 2016).

*Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1329–30 (M.D. Fla. 2011). The Amended Complaint contains no allegation that Pernod Ricard USA is a mere instrumentality of PRSA,including that the subsidiary's "separate corporate status is formal only and without any semblance of individual identity." *Schulman*, 2015 WL 11018438, at *4; *see also McCullough*, 268 F. Supp. 3d at 1349 n.9 (plaintiff did not establish entity "so dominates" a Florida company "so as to be its alter ego" where there is no evidence that entities are "so united" that one "practically ceases to exist"); *Verizon*, 810 F. Supp. 2d at 1330 (no alter ego where entities observed all relevant corporate formalities, including keeping corporate minutes, passing board resolutions, and maintaining separate corporate records and bank accounts).

Likewise, Plaintiffs fail to allege that any of PRSA's subsidiaries engaged in, or served as a vehicle for, any "improper conduct," *i.e.,* there are no allegations that the subsidiaries in question traded with the Cuban government, let alone traded in the "Subject Property." *See Gubanova v. Miami Beach Owner, LLC*, 2013 WL 6229142, at *4 (S.D. Fla. Dec. 2, 2013) (allegations that entities share a business address and overlap officers insufficient to establish alter ego, particularly where complaint contained only conclusory allegation that entity was formed to defraud creditors).

Instead, Plaintiffs' alter-ego theory is premised merely on the assertion that Pernod Ricard USA supplies and distributes certain of PRSA's products throughout the United States and/or the Americas. FAC ¶¶ 10, 11. In fact, Courts reject such arguments. *See, e.g., Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1268–69 (S.D. Fla. 2001) (rejecting claim that court should disregard corporate structure because "the only reason the subsidiaries exist is to perform certain functions for the defendants" and observing "there is nothing inherently improper about corporations creating subsidiaries to perform specific functions" and to hold otherwise would "ignore the historical justification for the corporate enterprise system"); *cf. Daimler*, 571 U.S. at 135–36 (the fact that subsidiary performed services parent would otherwise perform itself does not establish jurisdiction based on agency theory).[8]

---

[8] The exercise of personal jurisdiction over a foreign corporation for acts occurring outside of the United States is even more problematic given concerns regarding international comity. *See Daimler*, 571 U.S. at 140–42 (courts should heed principles of comity and avoid expansive views of general jurisdiction).

2.      *Plaintiffs Cannot Overcome The Evidence Confirming That The Court Lacks General Personal Jurisdiction Over PRSA*

Even if Plaintiffs had set forth a *prima facie* case of general personal jurisdiction, PRSA's declaration would eviscerate that showing. Since *Daimler*, the Eleventh Circuit has made clear that general jurisdiction is only appropriate over nonresident corporate defendants if "the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1205. The evidence shows PRSA's activities do not come close. It lacks a physical presence in Florida, and has not: had offices, a mailing address, bank accounts or investments, or real or personal property, entered into any contracts, been registered to do business, held any license or registration, purchased insurance, purchased equipment or supplies, filed taxes, or consented to jurisdiction in Florida. Decl. ¶ 6.  PRSA sells no wine or spirits to anyone in Florida, including Havana Club rum; its products are distributed in the U.S. and Florida through independent distributors. *Id.*, ¶ 25.

That reality precludes a finding of general personal jurisdiction in this circuit, where numerous cases have found personal jurisdiction constitutionally prohibited despite far more significant and systematic contacts than are alleged, or can be shown, here. *See, e.g.*, *Waite*, 901 F.3d at 1318 (contacts, including that defendant had a distributor and customers in Florida, built a manufacturing plant and was registered to do business in Florida, and maintained a registered agent in the state, were insufficient to make defendant "at home" in Florida); *Carmouche*, 789 F.3d at 1204 (excursion operator's connections, including Florida "bank account," two "Florida addresses," insurance purchased "from Florida companies," a "financing statement" filed with the Florida Secretary of State, joining a Florida-based non-profit trade organization, and consent to the Southern District of Florida's jurisdiction for lawsuits arising out of its agreements with cruise line not "'so substantial'" as to make this one of those "'exceptional'" cases); *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015) (agreements with dealers, marketing efforts, and trade show attendance in Florida insufficient); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411, 418 (1984) (CEO's trip to Houston to negotiate services contract, acceptance of checks drawn from Texas bank, and Texas-based purchases and training insufficient to confer jurisdiction).

Indeed, the <u>only</u> connection PRSA has to the United States is its U.S.-based subsidiaries.

That is not enough. As set forth above, where the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business" and "has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Sherritt*, 216 F.3d at 1293. PRSA and its subsidiaries pass that test easily. PRSA's declaration shows that its U.S.-based subsidiaries are independent of it under either an agency or an alter ego theory. Decl. ¶¶ 14-23.[9] For example, PRSA and its U.S.-based affiliates have separate and distinct employees, boards of directors, which meet at different times and in different locations and maintain their own minutes; and have separate and distinct officers. The subsidiaries are operationally and financially independent of PRSA, including independent day-to-day operations, pricing and marketing practices, books and records for financial and tax reporting purposes, and bank accounts. *Id*. None of the subsidiaries are authorized to act as agents for PRSA for the distribution of products in Florida. *Id*. ¶ 19.

These record facts prevent Plaintiffs from meeting their burden in the event the Court's inquiry goes beyond its examination of Plaintiffs' *prima facie* case. *See Sherritt*, 216 F.3d at 1294 (subsidiary's activities not imputed to parent on agency theory where child "has its own officers and boards of directors, determines its own pricing and market practices, has its own bank accounts and offices, and employees"); *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 276 (11th Cir. 2005) (no jurisdiction over parent where subsidiaries were "each responsible for their own day-to-day activities and finances, maintained separate books, records, and accounts from [defendant], and were not authorized to act as an agent for [defendant]"); *MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1358 (S.D. Fla. 2000) (no jurisdiction where defendants refuted alter ego allegations by affidavit showing parent and subsidiaries maintain separate offices and bank accounts and parent does not act in supervisory capacity over subsidiaries' employees).

### B.  *Plaintiffs Cannot Establish Specific Personal Jurisdiction Over PRSA*

A plaintiff may establish "specific personal jurisdiction" over a foreign defendant based on

---

[9] The Amended Complaint addresses only Pernod Ricard USA, which is incorporated in Delaware and maintains a principle place of business in New York, but is alleged to maintain in office and conduct business in Florida. FAC ¶¶ 5, 8, 9. PRSA also has an operational Florida-based indirect subsidiary, Pernod Ricard Americas Travel Retail, LLC, which manages duty free sales of spirits and wines and does not sell direct to consumers in Florida.  Decl. ¶ 17(a).  A second Florida-based indirect subsidiary is non-operational.  *Id*. ¶ 17(b).

"contacts with Florida," but "only as those contacts related to the plaintiff's cause of action." *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 793 (11th Cir. 2017). The long-arm statute allows jurisdiction "for any cause of action *arising from*" certain enumerated acts, including "carrying on a business," "having an office or agency," "[c]omitting a tortious act," or injuring "persons or property." § 48.193(1)(a) (emphasis added). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. To determine whether a sufficient connection has been alleged, courts analyze whether (1) the claims "'arise out of or relate to' at least one of the defendant's contacts with the forum"; (2) the defendant "'purposefully availed' itself of the privilege of conducting activities within the forum state"; and (3) defendant made "a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Waite*, 901 F.3d at 1313. As above, courts examine the assertions of specific personal jurisdiction on a *prima facie* basis, and based on the evidence.

Claims "arise out of" a defendant's contacts with the forum if an enumerated act took place "in the forum State" and there is a genuine affiliation between the enumerated act, the controversy, and the forum. *Waite*, 901 F.3d at 1314. Plaintiffs have not alleged that PRSA engaged in any Title III-related activity in Florida enumerated in the long-arm statute, nor do they allege that it directed any such activity at Florida. That defeats specific jurisdiction without more. *See Rautenberg v. Falz*, 193 So. 3d 924, 930 (Fla. 2d DCA 2016) (where complaint fails to meet "prong one" by failing to allege defendant committed a tortious act in Florida, the court "need not reach the issue of whether [defendant] has sufficient contacts …to satisfy due process concerns").

Plaintiffs also fail to make any factual averments that would subject PRSA to specific personal jurisdiction based on activity by a U.S.-based subsidiary. Plaintiffs allege that PRSA "through its agents and subsidiaries distributes a portfolio of liquor products including Absolut Vodka, Jameson Irish Whiskey and others," FAC ¶ 5, but do <u>not</u> allege that any of these products made and sold by different affiliates are related to Conac Cueto or Havana Club rum. They also do not (and cannot) allege that Havana Club rum is distributed in Florida, or that any PRSA affiliates have engaged in "trafficking" directed at Florida. Plaintiffs have failed to establish a

-14-

*prima facie* case of specific jurisdiction.[10]

Moreover, as set forth above, PRSA does not maintain an office or own real property, is not licensed or registered to do business, has not entered into any contracts, does not directly sell its products, and has not consented to jurisdiction in Florida. Decl. ¶ 6. PRSA does not sell or distribute any products of Cuban origin (including Havana Club rum) in Florida or elsewhere in the United States. Decl. ¶ 12; *see Don King Prods., Inc. v. Mosley,* 2016 WL 3950930, *3-4 (S.D. Fla. Jan. 27, 2016) (Williams, J.) (dismissing for lack of specific jurisdiction where no "connexity" between claim and defendant's contacts with forum).  As further shown above, Plaintiffs cannot rely on the activities of PRSA's subsidiaries in Florida to support specific personal jurisdiction. *Supra*, pp. 9-11. Accordingly, even if Plaintiffs had sufficiently pled that PRSA has engaged in an act enumerated in Florida's long-arm statute, they can never satisfy the additional requirements of showing the instant claim arises from such actions, or that specific personal jurisdiction could be invoked consistent with due process.

For the foregoing reasons, the Court lacks general and specific personal jurisdiction over PRSA and the Amended Complaint should be dismissed under Rule 12(b)(2).

## II.     THE COURT SHOULD DISMISS THE AMENDED COMPLAINT BECAUSE IT LACKS SUBJECT MATTER JURISDICTION

The issue of standing goes to the Court's subject matter jurisdiction, which is limited by Article III of the Constitution to the adjudication of actual "cases" and "controversies." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992).  At an "irreducible constitutional minimum," the standing doctrine requires a plaintiff to make the following three showings:

    i.    the plaintiff must have suffered an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical[;]'"

    ii.    there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court[;]" and

    iii.    it must be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

---

[10] For the same reasons noted in the general personal jurisdiction section, Plaintiffs' attempts to allege an alter-ego or agency relationship fall far short of the Eleventh Circuit's requirements.

*Lujan,* 504 U.S. at 560–61; *see also Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244–45 (11th Cir. 1998) (quoting and applying this framework).   It is Plaintiffs' burden to establish standing to sue. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998).   Here, even accepting as true the allegations of the Complaint for purposes of a motion to dismiss, their showing falls short on the second "causation" prong.

Plaintiffs identify their injury as an uncompensated taking, specifically that the "Cuban Government seized ownership and control of the Subject Property since 1963 … without consent from or compensation paid to Plaintiff, a U.S. citizen." FAC ¶ 30; *id.* ¶ 28 (the "Cuban Government maintains possession of the Subject Property and has not paid any compensation to Plaintiffs for its seizure").   Plaintiffs trace that injury, the uncompensated seizure of property, to Cuba's government exclusively. *Id.* ¶ 26 ("the communist Cuban Government confiscated the Subject Property"); *id.* ("In 1963, the communist government of Cuba gathered all Company assets and took them to the rum company of the Cuban government"); ¶ 29 (the "communist Cuban Government expropriated … the Subject Property").

That injury allegedly continues today solely because the Cuban government has not returned the property or paid fair compensation for it. *Id.* ¶ 28 (the "communist Cuban Government maintains possession of the Subject Property"); ¶ 29 ("Subject Property has not been returned and adequate and effective compensation has not been provided,"); ¶ 37 ("property, market segment and intellectual properties that were seized have not been returned and compensation has not been paid.").   In fact, PRSA had no contact or presence in Cuba until 1993, thirty years after this alleged taking by the Cuban government.   Plaintiffs do not allege that PRSA was aware of or complicit in the 1963 taking, or that it is now, or has ever been, empowered to cause the return of the property, or to direct the Cuban government to pay compensation to a Cuban national at the time of the alleged expropriation.   Nor do they allege that but for PRSA's alleged activities with Cuba, that the property would have been returned, or compensation paid.

Plaintiffs' allegations regarding PRSA begin 30 years after the 1963 expropriation, when in or around 1993, Pernod "distributed its Havana Club brand and line of products worldwide using the Subject Property by using the assets and intellectual property of the Subject Property without the authorization of Plaintiff." FAC ¶ 35.   Plaintiffs further allege that PRSA "participated in and profited from the communist Cuban Government's possession of the Subject Property without the authorization of Plaintiffs." *Id.* ¶ 34.

Critically, Plaintiffs do not assert that if PRSA had never entered into business with Corporación Cuba Ron S.A., that they would have received compensation for the alleged Conac Cueto property or the return of such property. Such a contention, in any event, would have no basis. It is clear, then, that PRSA's commercial activities with Corporación Cuba Ron S.A thirty years after the alleged taking – with an entirely different product and brand name – could not have **caused** the injury about which Plaintiffs complain, exacerbated it, or forestalled its remedy.

That means Plaintiffs lacks standing. As the Supreme Court has explained, "a federal court acts only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). Stated plainly, the "causation element [of standing] requires that a proper defendant be sued." *Common Cause v. Biden*, 748 F.3d 1280, 1284-1285 (D.C. Cir. 2014). Thus in *Socialist Workers Party*, for example, the Eleventh Circuit found no case or controversy where two minor political parties sued a class of 67 country supervisors of elections for a declaration invalidating a state statute, where the county supervisors had no authority to enforce the statute, and were thus the wrong defendants. 145 F.3d at 1248.

Here, Plaintiffs cannot "fairly trace" their alleged injury to PRSA, as there is no "causal connection" between the injury asserted and the conduct said to offend the law. *See Lujan*, 504 U.S. at 560; *Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d 243, 247 (11th Cir. 2014) ("To establish causation, [plaintiff] must demonstrate its alleged injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."). Nothing in the Complaint connects the injury that began in 1963 to PRSA's entirely unrelated distribution activities on a different product and different brand beginning in 1993. *See, generally*, FAC ¶¶ 22-37. There are no allegations in the Complaint that PRSA trades in Conac Cueto products, benefits from Conac Cueto's intellectual property (*i.e.*, that PRSA used any Conac Cueto formulations or other assets in the manufacturing of Havana Club rum), or that the Cueto family had any rights in the rum products PRSA produces in Cuba. Nor have Plaintiffs alleged in the Complaint that PRSA has previously or continues to trade in Conac Cueto products; Plaintiffs assert at FAC ¶ 32, but fail to demonstrate in any way, that the intellectual property of Conac Cueto was used in the production and sale of Havana Club rum, in an entirely different product category with no references to either Cognac, Coñac, Conac or Cueto, or that the Cueto family had any rights in the rum products that PRSA produces in Cuba. Plaintiffs

have failed to show any historical evidence of the production and sale of Cueto Conac (other than a few photographs), and certainly none that creates a demonstrable link with Havana Club rum.

That Helms Burton creates a *cause of action* against those who "traffic" in expropriated property does not mean that the *standing* of holders of alleged rightful claims under that statute is presumed.  Congress is not authorized to eliminate minimum standing requirements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) (separation of powers doctrine does not allow Congress to "erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing").  Accordingly, the Complaint should be dismissed.

## III.   PLAINTIFFS HAVE FAILED TO ALLEGE THAT PRSA KNOWINGLY TRAFFICKED IN PROPERTY IN WHICH EITHER PLAINTIFF ALLEGEDLY HAS A CLAIM

Plaintiffs fail to plausibly plead (or plead at all) that PRSA knowingly and intentionally "trafficked" in the property in which they "own[] the claim," *see* 22 U.S. 6023(13)(A)(i) (a person "traffics" in confiscated property if he "(i) … distributes … *confiscated property*").

### A.   *Plaintiffs Make No Plausible Allegations That PRSA Transacts In Property Allegedly Expropriated From The Cueto Family*

Plaintiffs allege that the Castro regime seized the assets of Cognac Cueto, a manufacturer of "cognac and other spirits," in 1963. FAC ¶ 24.  They allege that those assets and interests were folded into a Cuba-controlled company which distributed products under the brand name "Havana Club." *Id*. ¶ 26.  They allege that PRSA entered into a venture in 1993 to "promote[] and distribute[]" the "Havana Club brand and line of products worldwide" by "using the assets and intellectual property of the Subject Property without the authorization of Plaintiff." *Id*. ¶ 33.

An essential but missing link in the factual chain precludes Plaintiffs from stating a claim. The Court might be able to credit the allegations (had supportive facts been pled) that in 1963 the Cuban government expropriated Conac Cueto assets, and folded it into a state-owned enterprise. It might also credit the allegation that in 1993 PRSA began distributing Havana Club products acquired from an affiliate or successor to the Cuban Government Rum Company.[11]  But the Court *should not* infer from those allegations that the Havana Club rum products PRSA distributes are the same products that Conac Cueto manufactured, are produced using Conac Cueto property, or

---

[11]  Plaintiffs assumes, without any factual support, that the Cuban Government Rum Company and the company with whom PRSA actually trades, are related.

otherwise relate in any way to the Conac Cueto company. Plaintiffs' claim that Havana Club rum is "partially derived from Conac Cueto" (FAC ¶ 6) or manufactured using Conac Cueto assets is wholly speculative and contrary to established historical facts, since Havana Club has always existed as a rum brand since its establishment in the 1930's.[12] Plaintiffs themselves concede that the Havana Club brand was owned by a different entity. *Id* ¶ 26 ("Jose Arechabala, S.A.…was the original owner of [the] Havana Club brand").

The pleading standard has its limits. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, factual allegations are "taken as true," but "unwarranted deductions of fact" and "legal conclusion[s] couched as a factual allegation" are not. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005); *see also Iqbal*, 556 U.S. at 678 (complaint may not rest on "naked assertion[s]" devoid of "further factual enhancement."). When the plaintiff relies on inference, not fact, in support of a required claim element, the plaintiff must show the inference requested "is more plausible" than a competing inference that would excuse the defendant from liability. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1342–43 (11th Cir. 2010) (where defendant's conduct could be the product of either an illicit agreement or of independent, rational pricing strategy, plaintiff "had the burden to present allegations showing why it is ***more plausible*** that" defendants "would enter into an illegal price-fixing agreement … to reach the same result realized by purely rational profit-maximizing behavior").

The attempted critical inference embedded in Plaintiffs' recitation is that the property allegedly seized from Conac Cueto in 1963 is the same property being traded since 1993 by PRSA, or was at least derived from such property. Without that inference, Plaintiffs cannot plausibly allege that PRSA qualifies as a "person ... that traffics in property that was confiscated by the Cuban Government," as the Act requires. 22 U.S.C. § 6082(a)(1)(A); *In re Harbor East Dev. Ltd.*, 2011 WL 45335, at *3 (Bankr. S.D. Fla. Jan. 6, 2011) ("Title III of the Act was intended to grant U.S. nationals a private right of action to bring suit . . . against persons who 'traffic' in *their* confiscated property in Cuba.") (emphasis in original) Likewise, the statutory definition of "trafficking" requires a finding that the "confiscated" property is the same property bought or sold

---

[12] Rum and cognac are different spirits, with different properties. Rum is produced by fermenting and distilling varying combinations of sugarcane juice, syrup, and molasses, whereas cognac is a spirit derived from double-distilled white grapes.

by the defendant. *See* 22 U.S.C. § 6023(13)(A)(i) (a person "traffics" in confiscated property if he "(i) sells, transfers, distributes … or otherwise disposes of ***confiscated property***, or purchases, leases, receives…or otherwise acquires or holds an interest in ***confiscated property***").

Here, the "confiscated property" allegedly consisted of "[t]he Conac Cueto product line [which] included Conac Cueto Extra Viejo, Conac Cueto Anejo V.S., Conac Cueto Extra Dry, Champagne Conac Cueto, Aguardiente Cueto and others," and assets used to make those products. FAC ¶¶ 24-25. Plaintiffs fail to allege a logical connection between Conac Cueto and Havana Club rum. In fact, Havana Club is a rum brand with no plausible connection to Conac Cueto property whatsoever. Nor is there any factual support for Plaintiffs' claim that PRSA manufactures cognac products – in Cuba or anywhere – using Conac Cueto assets or that such assets, including bottles, labels, corks and barrels, continued to exist 30 years after their alleged expropriation.[13] On this record, accordingly, an inference that Plaintiffs have plausibly pled a threshold element of their Complaint is unfounded and would require the Court to credit "unwarranted deductions of fact." *Aldana*, 416 F.3d at 1248; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*Twombly's* plausibility standard requires more than the "mere possibility of misconduct"); *Iqbal*, 556 U.S. at 678 (distinguishing between factual assertions suggesting liability is "conceivable" versus those permitting conclusion that liability is "plausible").

### B. Plaintiffs Make No Plausible Allegations That PRSA "Knowingly And Intentionally" Transacted In Any "Confiscated" Property

Under the Act, "a person 'traffics' in confiscated property if that person ***knowingly and intentionally*** ... engages in a commercial activity using or otherwise benefiting from confiscated property." 22 U.S.C. § 6023(13)(A)(ii). In reviewing this provision recently, the Court flagged a statement from Helms-Burton drafter Representative Benjamin Gilman, who explained, "the only companies that will run afoul of this new law are those that are knowingly and intentionally trafficking in the stolen property of U.S. citizens." *Gonzalez v. Amazon.com, Inc.*, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (quoting 142 Cong. Rec. H1724-04, at H1737 (Mar. 6, 1996)). The Complaint's allegations regarding PRSA's mental state are conclusory and

---

[13] Exhibit "D" to the FAC (ECF 22-3) consists of several photos that purport to depict, *inter alia*, bottles and barrels used in the production of Conac Cueto products. These photos do little to create an inference, much less a plausible inference, that these are the same bottles and barrels used in the production of Havana Club rum.

boilerplate.  It alleges that "[u]pon information and belief, beginning on or about 1993 and continuing to today, the Defendants (sic) knowingly and intentionally commenced, conducted, promoted and distributed" Havana Club products "using the Subject Property." FAC ¶ 33; *id.* ¶ 34 ("Defendants also knowingly and intentionally participated in … the communist Cuban Government's possession of the Subject Property"). But the FAC's allegations offer no reason to believe that PRSA even knew that Conac Cueto existed.  Decl. ¶ 8.

Such allegations do not satisfy *Twombly* and *Iqbal*.  In *Gonzalez,* Judge Scola observed that the "Complaint offers only conclusory allegations that the Defendants knowingly and intentionally trafficked in confiscated property," specifically that "the Defendants 'knowingly and intentionally commenced, conducted, and promoted the sale of marabu charcoal produced on the Subject Property' and that they 'knowingly and intentionally participated in and profited from the communist Cuban Government's possession of the Subject Property.'" *Gonzalez*, 2020 WL 1169125 at *2.  Such allegations are "conclusory and, without any other allegations demonstrating the Defendants' knowledge, are legally insufficient to state a claim." *Id.* (citing *Twombly* and *Ruiz v. Experian Information Solutions, Inc.*, 2017 WL 1378242, at *2 (S.D. Fla. Apr. 14, 2017)). Nothing in such spare and generalized statements in Plaintiffs' Complaint permits an inference that PRSA, more than 30 years after the alleged expropriation of Conac Cueto and its assets, "knowingly and intentionally" traded in property allegedly expropriated by the Cuban government.

Because Plaintiffs have not plausibly alleged that PRSA knowingly and intentionally "trafficked in the Subject Property," her Title III claim fails as a matter of law.

### C.     *Plaintiffs Fail To Plead Ownership Of A Claim To Property Confiscated By The Government Of Cuba*

Title III provides that "any person that . . . traffics in property which was confiscated by the Cuban Government . . . shall be liable to any *United States national who owns the **claim** to such property*." 22 U.S.C. § 6082(a)(1)(A) (emphasis added). However, rather than pleading ownership of a claim, Plaintiffs instead plead that they "*are* the rightful owner of a 100% interest in certain property of a Cuban corporation, Conac Cueto, C.I.A., "*originally* located in...Havana, Cuba." *Id*. ¶ 21. (emphasis added). Two things are noteworthy in their averment: The use by Plaintiffs of the present tense when referring to their ownership of the assets of a Cuban company, and the use of the word "originally" which can only signify the continued existence of that company.

Plaintiffs go on to allege that "Marlene's father/Miriam's husband passed away on December, 1979," without a will, and further plead that:

> "...discussion in the family always held true that the family business would eventually pass to Plaintiff Marlene either through inheritance or gift. Plaintiff Marlene was led to believe that the Conac Cueto business, along with other businesses by the Cueto family in Cuba, would eventually pass to Marlene through some legal mechanism. In the event that this Court determines that Plaintiff Marlene has no interest in the property, Plaintiff Miriam is the individual who has inherited *100% of the business entity* after the passing of her husband through intestate inheritance." *Id.* ¶ 27 (emphasis added).

Fatally, Plaintiffs do not plead ownership of a *claim* to property in Cuba – they plead ownership, through inheritance, of "100% of the [Cuban] business entity" Conac Cueto, C.I.A.

While the Cuban corporation Conac Cueto certainly may be said to possess a claim against the government of Cuba for its expropriated Cuban assets, it may not assert it under Title III because that claim is not owned by a U.S. national and Title III explicitly limits the availability of its civil remedy to the claims of U.S. nationals. 22 U.S.C. 6082(a)(1).

The term "United States national" is defined as "any legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or any commonwealth, territory, or possession of the United States, and which has its principal place of business in the United States." 22 U.S.C. § 6023(15)(B).  Because Conac Cueto, C.I.A. was organized under the laws of Cuba it does not qualify as a corporate "national of the United States," and therefore it cannot state a Title III claim.

The pre-enactment testimony of Mr. Rademaker, counsel to the House of Representatives Committee on International Relations, describes the option available to Conac Cueto, C.I.A. and similarly situated Cuban companies as the Helms Burton Act was under consideration in Congress, namely incorporating in the U.S. and assigning ownership of their claims against Cuba to newly-formed U.S. entities: "[D]uring the time period between today and the date of enactment of this provision, it would be possible for someone essentially to...set up a U.S. subsidiary or affiliated entity in the United States and transfer that entity the claim." *See Cuban Liberty and Democratic Solidarity Act of 1995*: Markup Before the House Comm. On Int'l Relations, 104th Cong. 47 (1995).

The Act's Conference Report further confirms the option of a Cuban company incorporating in the United States for the purpose of bringing a Title III action, while foretelling the consequences of failing to do so before the Title was enacted:

> "Entities that are incorporated in the United States after the date of enactment cannot use the remedy with respect to property confiscated before the date of enactment, inasmuch as such entities could have not have owned the claim to confiscated property on the date of enactment because they did not then exist." H.R. Rep. No. 104-468, at 59 (1996).

It is too late for Plaintiffs to acquire Conac Cueto's claim because "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national *acquires ownership of the claim before March 12, 1996*." 22 U.S.C. § 6082(a)(4)(B) (emphasis added).  "In other words, a United States citizen must already own the claim to the confiscated property on March 12, 1996 when the Act was passed." *Gonzalez*, 2020 WL 1169125 at *2.  As the plaintiff did not satisfy the Act's timing requirement, the Complaint was dismissed.

Plaintiffs here fail to plead the essential elements of a Title III claim – ownership of a claim to property in Cuba by a U.S. national on the requisite date of March 12, 1996.  Accordingly, the Complaint should be dismissed.

## IV.  DISMISSAL IS PROPER BECAUSE PRSA WAS NOT PROPERLY SERVED WITH PROCESS

Fed. R. Civ. P. 4(h)(2) provides that a foreign company not within any U.S. judicial district may be served "in any manner prescribed by Rule 4(f) for serving an individual …" Rule 4(f), in turn, permits service of a foreign individual "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention...," or "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(1) and (f)(2)(A).

Compliance with Hague procedures is mandatory where the law of the forum state indicates that effective service requires transmittal of the complaint abroad. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698-700 (1988).  Since PRSA is a French corporation with no direct presence, officers, agents, or directors in Florida, Plaintiffs were required to serve PRSA in conformity with the Hague Convention and "as prescribed by the foreign country's law for service in that country." Rule 4(f)((2)(A); *see also Hickey v. Celebrity Cruises, Inc.*, 2015 WL

13776760, *3 (S.D. Fla. Feb. 2, 2015) (same).  To that effect, Article 19 of the Hague Convention provides that "[t]o the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions." T.I.A. S. No. 6638, 1969 WL 97765 (U.S. Treaty) (Nov. 15, 1965).  France and the United States are participants and signatories of the Hague Convention.  In France, service can be made via the French Central Authority or by a *huissier de justice*, as provided by the *Nouveau Code de Procédure Civile* (Code of Civil Procedure) ("N.C.P.C.") Art. 54 & 55 (Fr.); *see also Perfumer's Workshop, Ltd. v. Roure-Bertrand du Pont, Inc.*, 737 F. Supp. 785, 789 (S.D.N.Y. 1990).

Plaintiffs employed a *huissier de justice* to carry out service on PRSA, but the *huissier's* service failed to conform with the requirements of the French code of civil procedure.[14]  Title XVII, Chapter II of the N.C.P.C. sets forth the required form of process through the *huissier*. Specifically, Article 654 provides that service of process must be personal, and that service on a corporate entity is deemed personal where the process is delivered to its legal representative, to the latter's proxy, or to any person empowered for this purpose. *See* ECF 11-8.

Nothing in the record demonstrates that the process server attempted service upon a "legal representative, to the latter's proxy, or to any other person empowered for this purpose" as required by French law. *See* N.C.P.C. Article 654.  To the contrary, non-compliance with Article 654 is apparent from the return of service filed with the Court.  ECF 11.  The "Service of Process" form completed by the *huissier* states simply that the "Circumstances making impossible the service in person" are that the "[r]ecipient is absent," and "[t]he person present confirms the address but refuses to accept the complaint." *See* ECF 11-6.  It is clear, however, from the "Service of Process" and the "Service and Delivery of a Foreign Document," that service was not directed to a proper "recipient." *See* ECF 11-6 at 1-2.  These documents confirm that the service papers do not name a specific individual, and were not directed to a title or position (such as Chief Executive Officer, President, or other officer) who is authorized to accept service of process for PRSA.  *See* ECF 11-6 at 2 (notice addressed to "S.A. PERNOD RICARD").

---

[14] Plaintiffs in doubt over the validity of service of process on PRSA, filed an Amended Motion to Deem Defendant Served. *See* ECF 11.  Before PRSA had an opportunity to respond to the motion, the Court deemed PRSA served.  ECF 13.

In fact, the process server simply left the service form with an employee at the welcome desk at PRSA's headquarters in Paris, France. Decl. ¶ 7. The individual at the welcome desk is neither a legal representative of PRSA, nor authorized to accept service of process for PRSA. *Id.* Consequently, the employee's "refus[al]" to accept service of process (ECF 11-6) was not improper. Because the employee at the welcome desk is not one of the persons enumerated in Article 654, Plaintiffs' attempted service was improper and rendered service insufficient. Reference to the legal representative in a service form is a required formality under the terms of Articles 54, 648 and 654 of the French Code of Civil Procedure, and failure to comply with this requirement constitutes defective service that results in the invalidity of the service where, as here, the defendant will be prejudiced by the improper service.[15]

Because service was not properly effected, this Court lacks jurisdiction over PRSA. *See, e.g., Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.").

## CONCLUSION

For all of these reasons, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).

---

[15] Proper service of process is indispensable under the present circumstances. Helms-Burton has been a source of great friction between the U.S. and the EU. Indeed, soon after its enactment, on November 22, 1996, the Council of Ministers of the European Union adopted Council Regulation No. 2271/96 ("Regulation 2271"). Regulation 2271 prohibits compliance by individuals or companies of the European Union with certain specified laws, *including* the Helms-Burton Act, or with orders based on those laws. Article 5 of Regulation 2271 provides that "No [legal person incorporated within the European Union] shall comply … with any requirement or prohibition, including requests of foreign court, based on or resulting, directly or indirectly, from the laws specified in the Annex," including Helms-Burton. *European Union: Council Regulation (EC) No. 2271/96*, 36 I.L.M.125, 128, 1997 WL 79502 (Jan. 1997). Companies subject to the jurisdiction of any Member State of the European Union may be sanctioned if found to have breached Regulation 2271. Given the sensitivity of these claims within the EU, the recent advent of Title III claims, and potential liability to foreign companies submitting to the jurisdiction of a foreign court in a Helms-Burton action, strict adherence to proper service is especially warranted.

## **REQUEST FOR HEARING**

PRSA, pursuant to S.D. Fla. L.R. 7.1(b)(2), respectfully requests a hearing on its Motion to Dismiss the Complaint. Since its enactment in March 1996, Title III of the Helms-Burton Act had been suspended by every presidential administration.  On April 17, 2019, the current administration announced the decision to cease suspension of Title III, thereby allowing claims to be brought under that provision.  Title III claims are both novel and complex, and PRSA believes oral argument may assist the Court in its determination of jurisdiction, standing, and the intricacies of Title III.  PRSA estimates that a hearing would last approximately 1-2 hours.

Dated:  April 20, 2020

Respectfully submitted,

/s/ *Irma Reboso Solares*
Irma Reboso Solares (Fla Bar No. 797073)
isolares@carltonfields.com
Daniel G. Enriquez (Fla Bar No. 85864)
denriquez@carltonfields.com
Rachel A. Oostendorp (Fla. Bar No. 105450)
roostendorp@carltonfields.com
CARLTON FIELDS, P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida 33131-2113
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055

Scott Abeles (admitted *pro hac vice*)
sabeles@carltonfields.com
CARLTON FIELDS, P.A.
1025 Thomas Jefferson St., NW
Suite 400 West
Washington, D.C.  20007
Telephone:  (202) 965-8189
Facsimile:   (202) 965-8104

*Attorneys for Defendant Pernod Ricard, S.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of April, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide service on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Irma Reboso Solares*